**No. 47465.**—Protests 972619–G, etc., of S. A. Haram (New York).

Opinion by OLIVER, P. J. The sole question before the court is whether or not the merchandise is "hard dry-smoked herring." This question also arose in *Haram* v. *United States* (C. D. 390), which record was incorporated in the present case. In addition thereto the testimony of six witnesses was introduced. Considerable testimony was also introduced as to the method of smoking herring. It also appeared that there was a sharp conflict as to just how heavily smoked and how hard smoked herring must be before it would be properly dutiable as hard dry-smoked. A question also arose as to whether one of the samples (exhibit 3) in the instant case was fairly representative of the condition of the merchandise on the date of importation. The plaintiff contended that it was representative but the examiner claimed that it was not. Referring to exhibit 1 the examiner testified that it appeared "to have been when originally imported in a much softer condition," but that "at the present time it has approached a state of dryness *in smoking* which would cause me to classify it as a dry hard-smoked herring." The court noted that the examiner referred to a "state of dryness in smoking" in connection with a sample which had been under refrigeration since importation, and there was nothing in the record to indicate that exhibit 1 had been subjected to any further smoking than that to which it had been subjected before exportation. The examiner also testified as to several of the other exhibits.

Although confronted with a situation where the samples of fish for its guidance are claimed by the defendant to be in a different and harder state than when imported, even though the samples had been kept in cold storage on the steamer and since arrival in this country, the court stated there were features other than

hardness to assist in arriving at a decision. It stated that the dryness and hardness are caused by the smoking and drying process, which imparts color to the product, ranging from pale yellow to a dark brown or red, and that the longer it is smoked, the drier and harder it will become, and the darker and more distinctive will be the color acquired. Therefore, the court stated, a comparison must be made between plaintiff's exhibits 1 and 3 (samples from this importer's importation) and defendant's illustrative exhibit B (the sample claimed to represent the condition of the imported merchandise at the time of its arrival). There was nothing found in the record to convince the court that cold storage will change the color originally imparted to the fish by the smoking operation.

From a careful examination of the testimony and exhibits the court was satisfied that the merchandise in question is hard dry-smoked herring and therefore properly dutiable at ⅝ of 1 cent per pound under paragraph 720 (a) and T. D. 48033, as claimed.